# IN THE UNTIED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF MISSISSIPPI

# SOUTHER DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

JUL 03 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

| | |
|---|---|
| Thomas M. Lindsey, Tari L. Metzger, ) | CIVIL NO. 1:14cv260 LG-JMR |
| Any Un-Known Plaintiff(s) ) | |
| Plaintiff(s), pro se, ) | JURY TRIAL DEMANDED |
| Vs. ) | |
| Roderick Aycox, ) | |
| Select Management Resources LLC, ) | |
| Bonnie Wedgeworth, Richard Wedgeworth, ) | |
| The City of Gulfport, ) | |
| Gulfport Police Department, ) | |
| Unknown Defendants, et. al. ) | |
| Defendant(s). | |

# CONSOLIDATED CLASS ACTION RICO AND § 1983 and 1985(3) COMPLAINT

COMES NOW, Plaintiffs Thomas M. Lindsey and Tari L. Metzger, pro se, on the behalf of themselves and the class, and alleges herein, by and through, Thomas M. Lindsey and Tari L. Metzger and files this, their complaint prepared by Thomas M. Lindsey against Defendants Roderick Aycox, Select Management Resources LLC., Richard Wedgeworth, Bonnie Wedgeworth, the City of Gulfport, Gulfport Police Department and any Unknown Defendants, (collectively "Defendants") and in support thereof, Plaintiffs respectfully state as follows:

1

# I.   **INTRODUCTION**

Title Loans have long been viewed as legal loan sharking by most because of the industries high interest rates, and is continuingly being ignored and justified by stating that people who secure these type of loans are petty and minuscule, when in fact the consumers who regularly seek these loans are below the national poverty level or considered a lower class citizens who actually make up the bulk of the spending force of the national economy.

These people who are mostly minimum waged workers living from check to check and need the help but  cannot afford the extremely high triple digit interest rates charged by title loan companies nationwide like the defendant enterprise charges, and the people are being taken advantage of on a regular basis, and are being over looked in American society because historically petty loans were and still are openly frowned upon just as homeless people are frowned upon when encountered in the streets of most American cities, instead of being viewed as humans in need of help.

The recent ruling by the Supreme Court with the People United case makes it apparent that the wealthy will always have the political voice and the poor will have to sit back and suffer, and slave labor for a minimum wage that is not keeping up with the ever increasing costs of living the so called American dream. This "Blatant Bribery" under the guise of the constitutional right to petition the government, a tool that only the wealthy elite like Roderick Aycox can afford to use to line the politician's pockets with unlimited campaign contributions to the point that political agendas are regularly purchased whole sale, and the result of which is officials are being lavished and treated like "ROCK STARS" for doing a "public servant's" duty.

Defendant Roderick Aycox, the self-proclaimed "KING OF TITLE LOANS" could be the poster child for this tactic of buying policies and influence to further his Loan Sharking Scheme, and in his own words stated in an interview the depth of this truth about American politics.

"I support good government," Aycox says, "and I want to support good government through my eyes.

# II.   **PARTIES**

### A.      Plaintiff(s):

Plaintiff Thomas M. Lindsey here after referred to as ("Lindsey") is a male, 38 years of age, who is a natural born resident of the state of Mississippi, Lindsey is currently unemployed, homeless and living with friends in Gulfport, MS, Lindsey was prior to the instant cause of action a self-employed mechanic and owner and sole proprietor of Southern Pet Waste Removal of Mississippi, email address marklindsey41588@yahoo.com, (228)-224-5101.

Plaintiff Tari L. Metzger, ("Metzger") has been a resident of the state of Mississippi for about nine years, Metzger is currently unemployed, homeless, and is living with friends, Metzger's email address is tarimetzger@facebook.com.

Plaintiffs and proposed class members are individuals and/or entities that have suffered injury to or loss of, their business, property, or threat of harm to such by reason of the defendant(s) racketeering activities in violation of Federal and the State of Mississippi and or other state's RICO violations described herein, and personal injury under title 42 U.S.C. § 1983.

### B.   Defendant(s):

Defendant Roderick Aycox, ("Rod") is a resident of the state of Georgia, mailing address is 3820 MANSELL RD #280 ALPHARETTA GA 30022.

Defendant Leslie Aycox, (Leslie) is a resident of the state of Georgia, mailing address is 3820 MANSELL RD #280 ALPHARETTA GA 30022.

Defendant Richard Wedgeworth, ("Ricky") is a resident of the state of Mississippi, mailing address is 21031 Saucier Fairley Rd, Saucier MS 39574, and Ricky is President, owner, and the registered legal contact agent of All South Recovery.

Defendant Bonnie Wedgeworth, ("Bonnie") is a resident of the state of Mississippi, mailing address is 21031 Saucier Fairley Rd, Saucier MS 39574, Bonnie is possibly Ricky's wife, and she is Vice President and possibly part owner of All South Recovery.

Defendants Rod's unknown Relatives and friends (RRF) who assist Rod in criminal activity at SMR in his scheme of loan sharking.

Defendant Select Management Resources LLC. ("SMR") is a limited Liability company with its corporate headquarters located in Georgia at 3440 Preston Ridge Rd # 500, Alpharetta, GA 30005, phone number770-449-7005, this company is the alter ego of defendant Rod, it's only purpose is to "shield" Rod from personal liability while he's managing the enterprise and other companies assets.

Defendant the City of Gulfport, (GPT) is a municipal incorporation with its primary place of business located at Gulfport City Hall, at 2309 15th Street, Gulfport, Mississippi and is sued in its Supervisory Capacity.

Defendant the Gulfport Police Department, (GPD) is the local law enforcement agency for the city of Gulfport, located at 2220 15th St, Gulfport, MS 39501 (228) 868-5900

Unknown Defendants include but are not limited to the Gulfport Police Department (GPD).

Enterprise partner Loanmax LLC. ("LML") is a limited Liability company of national title loan chains located in varying parts of North America owned and managed by defendant SMR its parent company, with subornate managers at each store location, its corporate headquarters located at 3440 Preston Ridge Rd, Suite # 500 Alpharetta, GA 30005, C T

Corporation System is the legally registered contact agent for this companies Biloxi, Mississippi store located at 645 Lakeland East DR Suite 101. Flowood, MS 39232.

Enterprise partner All South Recovery LLC. ("ASR") is a limited Liability company located at 18281 Highway 49, Saucier, MS 39574, phone number 228-328-4007, it operates an all-black unmarked tow truck, and is owned and managed by defendant Ricky.

## III.    JURISDICTION and VENUE

Jurisdiction in this action is predicated upon Title 18, United States Code Section 1964, Title 28, United States Code, Sections 1331, 1343, and 1367(a). This Court has jurisdiction under the federal civil RICO statute, 18 U.S.C. § 1964(c), since the case is brought by and on behalf of persons injured in their business, property, or threat to harm such by reason of Defendants' conducting of the affairs of the RICO enterprise described herein through a pattern of acts constituting but not limited to collection of extensions of credit by extortionate means, and other conduct constituting RICO violations under 18 U.S.C. § 1962, as alleged herein. This Court has jurisdiction of the pendent Mississippi  state RICO claims pursuant to United Mine Workers v. Gibbs, 383 U.S. 715 (1966) and 28 U.S.C. § 1367(a), because those claims are so related to the claims arising under the laws of the United States that they form part of the same case or controversy.

This Court has jurisdiction under 28 U.S.C. § 1332(d) (2) since the matter in controversy is in excess of $5,000,000, exclusive of interest and costs, and is brought as a class action by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

This Court has jurisdiction under Title 42 U.S.C. § 1983, 1985 (3), 1986 and the Constitution of the United States of America for violations of State and Federal laws of The United States of America, and the State of Mississippi, and other States where Class Members are affected.

Mississippi Rules of Civil Procedure RULE 23. [CLASS ACTIONS] [OMITTED Comment: Class action practice is not being introduced into Mississippi trial courts at this time.

Venue for this action is proper under Title 18, United States Code, Section 1965 and Title 28, United States Code, Section 1391(b) (2) and (3), because a substantial part of the events giving rise to this action occurred in this District and because some of the Defendants reside, are found or transacted their affairs in this District and the ends of justice require that the other Defendants be brought before this Court. Plaintiffs invoke the expanded service of process provisions of Title 18, United States Code Section 1965(b).

# IV.   CLASS ACTION ALLEGATIONS

Plaintiffs seek certification of the following class ("the Class"):

All individuals and entities residing or owning property in the United States who claim economic losses, or damages to or loss of their property, businesses, or threat to harm such as a result of the Defendant RICO conduct.

This action is brought and may properly be maintained as a class action on behalf of the proposed Class described above, and such other additional classes or subclasses as Plaintiffs may propose and/or the Court may designate, pursuant to the applicable and appropriate provisions of Rule 23(a) (1)-(4), (b) (3), (b) (1), (b) (2), (c) (4) and/or (c) (5).

A.      Numerosity of the Class and/or Subclasses — F.R.C.P.  23(a) (1) The Class consists of two known and potentially tens of thousands of other individuals and businesses who have been economically damaged by the defendants, making joinder impracticable. Class members can be informed of the pendency of this action by print, internet, and broadcast notice.

B.      Commonality — F.R.C.P. 23(a) (2)      Common questions of law and fact exist as to all members of the Class. Because Defendants' behavior here is governed by federal regulations, the Class members will be subject to common questions of law.

These common questions of fact and law predominate over the questions affecting only individual class members.  The common questions include, but are not limited to:

a.      Whether Defendants engaged in a pattern of racketeering activity directly in violation of Uniform Commercial Code Article 9-SECURED TRANSACTIONS § 609-(b);

b.      Whether Defendants engaged in a pattern of criminal activity in direct violation of RICO statutes by using an enterprise to laundering money, make extortionate extensions of credit and the activities of which affect, interstate or foreign commerce, acquired or maintain an interest in an enterprise through a pattern of racketeering activity, and manipulated an enterprise for purposes of engaging in, concealing, or benefiting from a pattern of racketeering activity in violation of state and federal laws;

c.      Whether Defendants committed conspiracies that have violated federal and state RICO laws, and 42 U.S. Code § 1985 (3), 1986;

d.      Whether Plaintiffs and Class members have been injured in their business, property, or by threat of harm to such as a result of Defendants' acts that constitute RICO violations;

e.      Whether Plaintiffs and Class members have suffered personal injury entitling them to relief under RICO, 42 U.S.C. § 1983, 1985 (3), and 1986.

C.      Typicality — F.R.C.P. 23(a) (3)

The claims in this RICO Class Action Complaint are typical of the claims of the Class in that they represent the various types of injury to business, property, or threat of harm to such caused by the defendants. Each Class member's claim arises from the same or similar course of planning, decisions, and events, and each Class member will make similar legal and factual arguments to prove Defendants' federal and state RICO violations.

D.      Adequacy of Representation — F.R.C.P. 23(a) (4)

Plaintiffs are attempting to fairly and adequately represent and protect the interests of the Class. Plaintiffs have not retained counsel with substantial experience in prosecuting mass tort, and RICO class actions, Plaintiff Lindsey prepared the complaint in the instant case as a pro se class representative and is not an attorney or counsel who can represent claimants or potential claimants from each of the affected states and claimants with each type of claim (property related, business-related), and appointment of counsel is therefore needed with experience in complex class action litigation and trials, including the RICO and section 1983 litigation. Plaintiffs are committed to prosecuting this action vigorously on behalf of the Class but do not have the financial resources to do so. Plaintiffs do not have interests adverse to those of the Class, and would invoke rule 23 (g) of the F.R.C.P. for the appointment of proper counsel for the representation of the class as a whole.

E.      Class Certification under F.R.C.P. 23(b) (1), (b) (2), and (b) (3)

Class certification pursuant to Rule 23(b)(1) is appropriate because the prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class, and could substantially impede the ability of other members to protect their interests.

Class certification pursuant to Rule 23(b) (2) is also appropriate because Plaintiffs and all members of the proposed class seek injunctive relief under federal or state law, as applicable.

Class certification pursuant to Rule 23(b) (3) is also appropriate because class action treatment is a superior method for the fair and efficient adjudication of the controversy. Common issues predominate over individual issues, and there is no interest by members of the class in individually controlling the prosecution of separate actions. The size of the class renders joinder impracticable, and failure to certify the class will likely prevent individuals who have been damaged by defendant's scheme from pursuing their claims. Without a class action, individual class members would face burdensome litigation expenses, deterring them from bringing suits that would adequately protect their rights. Whatever difficulties may exist in the management of the class action are greatly outweighed by the class action procedure that

would provide claimants with a method for the redress of claims that they may not otherwise be capable of pursuing.  The class action device is superior to individual litigation under the circumstances of this case because it provides the benefits of unitary adjudication, judicial economy and economies of scale. The class action device in this civil RICO action provides access to the courts and a measure of justice and accountability for the individual and business claimants whose incomes, business and properties have been damaged by defendant's unlawful conduct.

The Plaintiffs and all Class members seek treble damages for their injury under the federal civil RICO provisions of 18 U.S.C. § 1964(c), including but not limited to economic damages for injury to their, business, property, or threat to harm such or loss of such (including diminution of property values), cost of the suit, attorney's fees, injunctive relief and any other relief to which they may be entitled in law and/or equity. The Plaintiffs and all Class Members also seek equity relief under MS RICO statue Title 97 - Chapter 43 - RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (commonly referred to as "Mississippi RICO Act" or "Mississippi RICO"), and any other states RICO that may apply to any other potential class members in particular (Civil Remedies) and under Title 42 U.S.C. § 1983, 1985 (3), 1986.

## V.    **GENERAL STATEMENT OF FACTS**

On or about 2012 Plaintiff Metzger defaulted on a title loan she had acquired from LML for her 1989 blue Ford Mustang valued at $1,500, one day after default Lindsey and Metzger observed an un-marked all black tow truck block Metzger's car in the parking lot of her apartment at Apple Apartments in Biloxi, MS, and two un-identified white males jumped out of the tow truck and one of the men angrily yelled at Metzger in front neighbors that she better give them her car or they were going to call the Biloxi police department and have her arrested, because of the threat made to harm her reputation Metzger gave the men her car and it was later sold at auction.

On or about 2013 Plaintiff Lindsey defaulted on a title loan he had acquired from LML for his grey 2005 Dodge Ram valued at $9,800, Lindsey had already seen how LML repossession process worked with Metzger's car being forcefully taken, and understood that if he defaulted LML would forcefully take his truck as well or threaten or actually harm his reputation to by arrest if he protested or refused.

On or about November 29th 2013 at or around 3:30 am. Lindsey heard a vehicle pull into the yard of his friend's home, Lindsey went to investigate and found an un-marked all black tow truck parked in front of his Dodge truck, and an un-identified white male was directing the driver of the tow truck to the front of Lindsey's truck.

Lindsey asked the man what they were doing and who they were, and the only response was "We are here to take this truck", Lindsey asked did they have a court order to take the truck and got no reply, Lindsey then told the men to leave the property unless they had a court

order, that they were trespassing and cannot forcefully take his truck against his consent, Lindsey's truck was then hoisted up and Lindsey got into his truck started the engine put it into reverse full throttle and woke up some neighbors, Lindsey then went to the driver of the tow truck and told him to release the truck and leave, you are trespassing and attempting to steal my truck I will call the Gulfport police department, the tow truck drive then smirked and showed Lindsey his cell phone on which "he" the tow truck driver, had already called the police and advised them that Lindsey was resisting repossession and needed their assistance, seven Gulfport police officers arrived and instead of preventing the two men from stealing Lindsey's truck, they instead did not leave until the tow truck was allowed to forcefully take Lindsey's truck away against his will or with his consent without lawful judicial order or service of such.

On or about November 30th 2013 Lindsey contacted by phone LML office and was falsely told his truck had been taken to Hattiesburg, Mississippi, and later was told Bay St Louis, Mississippi, and finally told it was being held at ASR, a few days later when Lindsey contacted ASR an unidentified female told Lindsey if he wanted to retrieve his personal property from inside his truck that he would have to bring and give  ASR $25 and the key to his truck or pay LML $4,500, to this Lindsey refused and made the woman aware that ASR had no legal right to withhold his personal property, the woman then told Lindsey that if he was going to cause a problem that they(ASR) would break into his truck and remove his personal property and send it to LML, or dispose of it if he refused to pay or cooperate.

Lindsey then phoned LML and spoke to a woman claiming to be the manager of the LML Biloxi Mississippi office where Lindsey got his loan, Lindsey told the woman that the tow company had forcefully took his truck against his consent, and breached the peace in violation of State and federal laws and Uniform Commercial Code (UCC) § 9-609, and that the police were called and Lindsey demanded LML return his property, the woman then laughed at Lindsey and told him that he didn't know what he was talking about, and that LML can take the truck by any means.

On April13th 2014 Lindsey hand delivered and return demand, and on April 14th, 2014 sent by certified mail a notarized written demand for the return of his truck within ten days of receipt, and all of his personal property to LML, a copy of which is attached hereto as exhibit #-A-B, to the date of this filing Lindsey has gotten no response, a copy of vehicle registration is attached hereto as exhibit #-C.

The following is curtsey an interview with Defendant Rod and other public reports: Lender takes all in repo cases Atlanta Journal-Constitution ^ | 01/30/05 | Alan Judd, Carrie Teegardin, Ann Hardie Posted on 2/17/2005, 7:39:09 AM by A. Pole

In 1990, Aycox was a college dropout and a used car salesman with uncertain prospects. One day he got a flier hawking software to manage a new business called title pawn. He didn't buy the software, but he bought into the concept. Stretching his credit cards to their limits, he rented a storefront on Tara Boulevard, put up a banner and waited for borrowers to find him. They did. The first day, he made four loans. Aycox worked solo behind the counter for two

years, logging 100-hour workweeks. After the General Assembly approved title lending, Aycox expanded in Atlanta and to Birmingham. To take title lending national, though, Aycox needed partners. He joined with a pair of investors in 1993 to form a company called Title Loans of America. The Atlanta-based firm soon became America's largest title lender. Aycox says his partners put up the money and he provided the expertise to open about 200 stores in 15 states. Expanding into some states meant little more than filling a regulatory vacuum; those states' laws neither specifically allowed nor barred title lending. Opening in other states, however, required mastering local politics. In five states, Aycox appeared before legislative bodies, advocating laws that would permit title lending.

In other states, he met with banking regulators, encouraging them to interpret their rules to allow his business to operate profitably — that is, by charging triple-digit interest rates. Almost everywhere he lent money, or wanted to lend money, Aycox spent money on political contributions. Since 2000, Aycox, his companies and close relatives have donated $313,900 to 130 state and federal candidates and political committees in 10 states, according to an analysis of databases compiled by the Center for Responsive Politics and the Institute on Money in State Politics. About $90,000 of those donations went to Georgia campaigns. Earlier, news reports in Tennessee identified Aycox as the largest individual contributor in that state's elections in 1998, three years after legislators there had legalized the title lending industry. Aycox's money flows to Democrats and Republicans alike.

"I support good government," Aycox says, "and I want to support good government through my eyes."

In Oklahoma, Aycox seemed to have everything in place seven years ago to win approval for title lending. He hired two top lobbyists: a former state attorney general and a former House speaker. He spread campaign contributions. His lobbyists persuaded the influential chairman of the House banking committee to sponsor the legislation. But as the committee was about to consider the bill, an Oklahoma City television station reported that one of Aycox's partners at the time had once been accused of drug trafficking and the other had been linked to organized crime figures. Neither had been convicted of crimes. Still, the report led to "discussion and debate and name-calling" during a committee hearing, says the bill's sponsor, former Rep. Bob Weaver, a Democrat from Shawnee. Opponents already had complained that high-priced title loans would prey on the poor, making them even more reliant on government services to survive. After the television news story aired, Weaver says, they began equating title lending to criminal activity. "There was just too much controversy," Weaver says. He let the bill die without a hearing before the full House. Later that year, Aycox sold his interest in Title Loans of America. He started his own company, Select Management Resources, based near his home in Alpharetta, and opened stores under the names Atlanta Title Loans, Loanmax and North American Title Loans. Aycox declines to disclose earnings of the privately held company.

9

In October 1994, a tow truck driver shot and killed a borrower while repossessing a car for Aycox's firm. The incident resulted in a private financial settlement with the borrower's widow, according to court records.

By Hamil R. Harris Washington Post Staff Writer Sunday, May 17, 2009   D.C. Attorney General Peter Nickles announced last week that the District has resolved lawsuits against two Northern Virginia automobile title lenders that have agreed to repay more than $1 million to hundreds of D.C. residents who lost their cars and were forced to pay thousands in interest for loans they took out against their vehicles. The District filed suit against LoanMax and CashPoint in March after consumers complained that the firms were violating the District's Consumer Protection Procedures Act, charging interest rates of more than 300 percent, far exceeding the city's cap of 24 percent on loan interest rates. The borrowers signed over their car titles to the companies as collateral. "These companies were charging annual interest rates of about 300 percent and taking the titles of people's automobile, and if somebody fell behind, they would auction off their cars," Nickles said in an interview. "You don't escape our laws . . . by simply hanging out in Virginia." Ad icon Nickles said more than 650 D.C. residents who obtained loans from Nov. 24, 2007, to this month will be eligible to receive hundreds of thousands of dollars in refunds under the terms of the settlement. One such person is a 67-year-old retiree who paid more than $2,000 because of interest payments on a $1,500 loan. "That was the biggest rip-off. They took advantage of people with hardships," said the woman, who obtained a loan in July from CashPoint, an Alexandria-based firm. The woman, who asked that her name not be used, borrowed against her 2002 Toyota Avalon, which was worth more than $30,000 when she purchased it in 2002. "When I took out the loan, I had to pay a $125 processing fee, then I had to pay $382.19 a month on the loan," she said. "I ended up paying $2,318.23 on a $1,500 loan. They begin calling me before the payments were due. I paid every month, and they still called me three or four times a month before the due date." The car-title loans are similar to payday loans, which allow consumers to easily qualify for cash, but with expensive fees and exorbitant interest rates. In 2007 the D.C. Council passed a law capping the annual percentage rate of loans at 24 percent. As a result, most of the companies that offered the short-term loans closed their stores in the District. Nickles said LoanMax and CashPoint aggressively recruited D.C. residents to go to their Northern Virginia offices. Nickles said the settlement called for the firms to give full refunds to all D.C. residents who obtained loans from Nov. 24, 2007, to this month and to return vehicles that were repossessed. If a consumer's car has been sold at auction, the companies will refund the amount for which the vehicle was sold. The firms also have agreed to make a contribution to the city's consumer protection fund and to stop doing business in the District.

All told, two major title pawn businesses were among the state's largest political donors in 2007-08, giving $362,000 to Georgia politicians. That includes $35,800 from TitleMax CEO Tracy Young, as well as $80,000 from family members of title pawn pioneer Rod Aycox and $53,810 from his company Select Management Resources. The top 10 recipients:

Insurance Commissioner John Oxendine (above) — $37,100

House Speaker Glenn Richardson — $32,200

Georgia Republican Party – $30,000 Georgia Republican Senatorial Trust — $27,000

MMV Alliance Fund (Richardson's political fund) — $25,000 Lt. Gov. Casey Cagle — $23,400

Sen. Eric Johnson — $19,500

Rep. Mark Burkhalter (House speaker pro tem) — $14,900

Rep. Rep. James Mills (chairman, House Banking Committee) — $8,900

Report: #563523 #5 UPDATE EX-employee responds Insider's View AUTHOR: Anon - (United States of America) SBMITTED: Friday, March 09, 2012      I worked for this company for more than six years. First of all, it's an "Interest" only loan. Any payment quoted to you is an interest payment only and you have to pay more than that in order to pay on the amount you actually borrowed. If you were told otherwise it is most likely that you weren't lied to. Most of the people hired to work for this company aren't even trained properly so they do not know nor do they understand themselves the whole process and how it works until months after they have been there. This company does nothing to try to train their employees properly. It's like they don't want new employees to realize the scamming that's going on right in front of them. The interest rate is more than ridiculous, but what beats it all is the fact that states allow this to happen to people who want money. All the blame doesn't fall at the feet of these states however, people need to take responsibility for their own actions and yes, read something before you sign it. But these states that allow it to happen do not care because the owner of this company donates a lot of his scammed money to the governors and other big-wigs in order to keep them turned the other way. I saw a lot of behind the scenes bullcrap that goes on as well. The owner hires all of his relatives to do his dirty work while his pockets get fatter and they don't mind running around feeling like they are some Wall Street executive while looking like peons in the process.

On March 20, 2012 The Center for Public Integrity reported: In July of 2011, the pro-Mitt Romney super PAC "Restore Our Future" accepted a check for $100,000 from the Rod and Leslie Aycox Foundation, a nonprofit with the same tax status as a charity or hospital in violation of Internal Revenue Service Code 501(c) (3), Restore Our Future refunded the full $100,000 to the foundation in February 2012, That same month, Rod Aycox personally made a contribution to the pro-Romney super PAC of $100,000, In addition to the $100,000 to Restore Our Future, Aycox has given $16,900 to other candidates this cycle, according to the Center for Responsive Politics. This includes $5,000 to David Dewhurst, the Republican lieutenant governor of Texas, and various congressional candidates both in his home state of Georgia and around the country. His wife, Leslie Aycox, has also given nearly $15,000 to candidates, CRP shows.

# VI.   RICO ALLEGATIONS

This is a class action lawsuit filed pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages and other relief for Plaintiffs and all others similarly situated. Plaintiffs and the class were injured in their business, property or threat of harm to by reason of the defendant's ongoing, systematic scheme of loan sharking for financial gain at the expense of the plaintiffs, accomplished by the conduct of Rod, Leslie, Ricky, Bonnie, SMR, LML and ASR's who form an association in-fact RICO enterprise through a pattern of acts indictable as laundering of money, murder, loan sharking, Bribery, extortionate extensions of credit, Collection of extensions of credit by extortionate means, financing extortionate extensions of credit, Strong armed robbery, engaging in monetary transactions in property derived from specified unlawful activity, Interference with commerce by threats or violence, Interference with interstate or foreign commerce and conspiracies to effect those acts.

The object of the defendants' scheme was to obtain profit by unlawful means in violation of Uniform Commercial Code § 9-609 (UCC) which governs all secured contracts in the state of Mississippi and across the United States of America, particularly UCC § 9-609 (b) which stipulates the manner in which collateral is taken after debtor default, and any unlawful acts which violate UCC § 9-609 (b)  renders self-help repossession of collateral unlawful if it results in a breach of the peace, the longevity of the enterprise in a pattern of loan sharking, bribery, laundering of money, murder, extortionate extensions of credit, collection of credit by extortionate means, Strong armed robbery, grand larceny, engaging in monetary transactions in property derived from specified unlawful activity, Interference with commerce by threats or violence  particularly (1) engaging in monetary transactions in property derived from specified unlawful activity  (2)  conspiring to protect the profits of unlawful activity with limited liability licensing  with the states of Georgia and Mississippi and any other state which defendants affect interstate or foreign commerce (3) financing extortionate extensions of credit, making extortionate extensions of credit and Collection of extensions of credit by extortionate means (4) Bribing or attempting, and conspiring to bribe political officials to gain influence in the law making process to further the unlawful activity of the enterprise (5) conspiring to commit the criminal acts stated herein.

This RICO action is brought under the federal civil RICO statute, 18 U.S.C. § 1964(c). Plaintiffs allege that Defendants unlawful conduct is in violation of UCC § 9-609 (b) and the federal RICO statute, in particular 18 U.S.C. § 1962 (a) (b) (c) (d). This RICO action is also brought under Mississippi Code Title 97 – Chapter 43 - Racketeer Influenced and Corrupt Organization Act (RICO) The economic injury to the Plaintiffs' and class members' business, property, or threat of harm to such was proximately caused by reason of these RICO violations that resulted in Plaintiffs loss or damage of their property, damages to their business or threat of harm to such.

Plaintiffs seek treble monetary damages under the federal RICO statutes, as well as temporary, preliminary and permanent injunctive and any other relief to which they are entitled under both Federal and Mississippi and any other states RICO statutes where any class members affected is situated.

## VII.   Title 42 U.S.C. § 1983,  1985(3), 1986 ALLEGATIONS

This is a class action lawsuit is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages and other relief for Plaintiffs and all others similarly situated. Plaintiffs and the Class members suffered personal injury by reason of, but not limited to defendant GPD knowingly under color of law, by agreement, conspiring with the enterprise before or after the fact and acquiesced in the policy of allowing its police force to aiding and abetting the RICO enterprise, GPT has aiding and abetting the RICO enterprise and denied Plaintiffs, and other inhabitants Civil Rights by knowingly acquiesced a policy of claiming "Ignorance", this the policy and/ or custom which is the driving force behind the pattern of police misconduct which does in fact exist,  that caused harm to Plaintiffs deliberately and that the plaintiffs injuries include but are not limited to pain and suffering, emotional distress, lost potential employment, loss of earning capacity, lost potential wages, loss of use of property, loss of property, loss of enjoyment, loss of consortium, loss of life, liberty and due process, as a direct result of defendants unlawful activity, and wantonness, maliciousness, or willful disregard, and deliberate indifference for the rights of plaintiffs in violation of United States Constitution, where under the color of state and federal law U.C.C. - ARTICLE 9 - SECURED TRANSACTIONS § 9-609 (b) [Judicial and nonjudicial process, Defendants violated Plaintiff's Constitutional rights  by reason of it allows it's police force to aid and abet in criminal activity by a show or threat of force, or by failure to prevent pre advised deprivation or the attempts to deprive of civil rights, by reason of failure of the GPD to prevent reported criminal acts against the Plaintiffs and Class members  in self-help repossession that violate state and federal law, and Uniform Commercial Code Article § 9-609(b) that prohibit and make it unlawful to forcefully take a debtor's property without judicial order where it results in a breach of the peace, and is indictable as grand larceny, and conspiracy in the State of Mississippi, and in violation of Federal law18 U.S. Code § 241, 242.

By reason of Defendant(s) Rod, SMR, Ricky and Bonnie in their supervisory positions and under the color of state and federal law alleged herein conspired to deprive Plaintiffs and Class members of their civil rights in violation of the United States Constitution, and injured the Plaintiff and Class members that caused harm to Plaintiffs deliberately and that the plaintiffs injuries include but are not limited to pain and suffering, emotional distress, lost potential employment, loss of earning capacity, lost potential wages, loss of use of property, loss of property, loss of enjoyment, loss of consortium, loss of life, liberty and due process, as a direct result of defendants unlawful activity, and wantonness, maliciousness, or willful disregard, and deliberate

indifference for the rights of plaintiffs in violation of United States Constitution, where under the color of state and federal law U.C.C. - ARTICLE 9 - SECURED TRANSACTIONS § 9-609 (b) [Judicial and nonjudicial process, by the conversion of Plaintiff Lindsey's personal property, which includes but is not limited to the theft of Lindsey's Transportation Works Identification Credentials (TWIC) issued by Transportation Security Administration (TSA) which prevented and hindered, Lindsey from meaningful gain of employment, and the unauthorized possession of Lindsey's TWIC card in violation of Federal law, and conversion of the personal property within Lindsey's truck that was forcefully taken and refused to be returned after verbal and written demand.

## VIII.   **Pertinent Uniform Commercial Code Violations**

Uniform Commercial Code Article § 9-609. SECURED PARTY'S RIGHT TO TAKE POSSESSION AFTER DEFAULT.
Under UCC § 9-609 (b) [Judicial and nonjudicial process.]

A secured party may proceed under subsection (a):
(2): without judicial process, if it proceeds without breach of the peace.

UCC § 9-609 (b) only authorizes secured party's right to take possession after default without judicial process, if it proceeds without breach of the peace, this means if done without the debtors knowledge or protest that results in a breach public tranquility and order, the offense of breaking or disturbing the public peace by any riotous, forcible, or unlawful proceeding Law Dictionary: What is BREACH OF THE PEACE? definition of BREACH OF THE PEACE (Black's Law Dictionary), defendant's use of force to take possession by means of any criminal act, either verbal or other overt criminal acts expressed as a threat, of violence, or unlawful coercion, acts or threats of any such criminal acts that exhibit force violate the peaceful surrender of collateral requirement implied by UCC § 9-609 (b).

## IX.   **The RICO Enterprise**

In 1993 TLA was an "enterprise," within the meaning of 18 U.S.C. § 1961(4), to carry out its pattern of racketeering activity. This enterprise consisted of Rod along with his unknown suspected criminal partners, ("Enterprise"). This Enterprise possessed a common purpose and goal, a membership, organizational structure, and ongoing relationships between Rod and his partners with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term objective through a continuous course of conduct that affected and continues to affect interstate and foreign commerce by reason of Rod investment of profits generated by a pattern of racketeering activity in an enterprise which engages in but is not limited to collection of extensions of credit by extortionate means in violation of18 U.S.C. § 1962(a) and UCC § 9-609 (b) and Mississippi state and other state's and federal laws.

In 1998 LML was an enterprise, and at least by 2012 ASR even though being beyond LML control, formed an association-in-fact enterprise established and maintained through a pattern

of racketeering activity "enterprise," within the meaning of 18 U.S.C. § 1961(4), to carry out its pattern of racketeering activity.  This enterprise consists of LML and ASR along with other unknown defendants ("Enterprise") and was aided and abetted by GPD.  This Enterprise possesses a common purpose and goal, a membership, organizational structure, and ongoing relationships between LML and ASR and other unknown defendants similar to ASR with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term objective through a continuous course of conduct that affected and continues to affect interstate and foreign commerce by reason of Rod's investment of profits from a pattern of racketeering activity that created alter ego SMR which owns, created and manages the LML enterprise and other business' that forms an association-in-fact enterprise with ASR maintained through a pattern of racketeering activity by engaging in collection of extensions of credit by extortionate means, and other RICO activity in violation of 18 U.S.C. § 1962(a) and UCC § 9-609 (b) and Mississippi and other state's and federal laws.

The Enterprises existed separate and apart from the pattern of racketeering activity, inasmuch as Rod, SMR, LML, ASR and other partners and the Enterprises have multiple goals, not all of which are known. The lawful activity engaged in by the Enterprises included ongoing title loaning and other services such as ASR's mechanic repair shop.  But Rod had, since at least 1993, used these enterprises at some point to conduct the related acts of which includes but is not limited to the 1993 and 1998 investment of profits from pattern of racketeering activity in the creation of an enterprise, and by agreement conspiring with unknown partners to conduct the criminal acts of money launder, loan sharking, murder, bribing of public officials, and collection of extensions of credit by extortionate means comprising the pattern of racketeering conduct that affected and continues to affect interstate and foreign commerce  and conspiracy to commit these acts in violation of 18 U.S.C. § 1962(a) (d) and Mississippi and other state's and federal laws.

### The RICO Predicate Acts

Defendants engaged in an unlawful scheme of Loan Sharking or aided and abetted in such conduct, and other overt acts indictable as racketeering activity for the purpose of profiting from unlawfully and forcefully taking the property of the Plaintiff's and Class members, examples of these predicate acts include, but are not limited to (upon information and belief, numerous others will be identified in the process of discovery), the following:

I.   Upon information and belief, Rod invested profits from money generated from a pattern of racketeering activity in 1993 and the 1998 sale of interest in TLA and used the profits to invest in the creation of the enterprise LML in 1998 which forms the association-in-fact enterprise with ASR to launder money generated from a pattern of racketeering activity and other unlawful acts in violation of 18 U.S.C. § 1951, 1962(a) UCC § 9-609 (b) and Mississippi and other state's and federal laws. .

II.    Upon information and belief, in 1993-1998 Rod and his unknown partners by agreement conspired, attempted or did bribe law makers with campaign contributions in the state Oklahoma to gain political influence in the law making process and further the enterprise scheme of loan sharking in violation of 18 U.S.C. § 1962 (d) and Oklahoma state and federal laws.

III.   Upon information and belief, Defendants did commit murder when In October 1994, a tow truck driver shot and killed a borrower while repossessing a car for Aycox's firm in violation of 18 U.S.C. § 894-1111-1961, and UCC § 9-609 (b) and other state's laws and federal laws.

IV.    Upon information and belief, SMR as Rod's alter ego did knowingly receive any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962 (a) and Mississippi and other state's laws and federal laws.

V.     Upon information and belief, Rod on March 30, 2009 was sued in the Superior Court for hundreds of violations to the usury laws in the District of Columbia, civil action number 0002397, in violation of 18 U.S.C. § 1962(b), state and federal laws.

VI.    Upon information and belief, LML and ASR has engaged in collection of extensions of credit by extortionate means, Interference with interstate and foreign commerce, making extortionate extensions of credit, financing extortionate extensions of credit in violation of 18 U.S.C. § 1962(b) as alleged herein.

VII.   On or about 2012 ASR agents, within the meaning of 18 U.S Code § 891 (7) used the threat of harm to her reputation to unlawfully coerce and forcefully take Metzger's property and LML later sold Metzger's 1989 ford mustang in violation of UCC § 9-609 (b) and committed the act of grand larceny in violation of Mississippi Code MS Code § 97-17-41, and federal law.

VIII.  On or about November 2013 ASR forcefully took plaintiff Lindsey's 2005 dodge ram truck in violation of UCC § 9-609 (b) and committed the act of grand larceny in violation of Mississippi Code MS Code § 97-17-41, and federal law.

IX.    On or about December 2013 ASR attempted to force Lindsey to pay a fee of $25 and surrender the key to his dodge ram truck that was taken by force by ASR agents, as a condition of return of his personal property held within his truck in violation of UCC § 9-609 (b) and the laws of the state of Mississippi, and other federal laws.

X. Upon information and belief, On or about July 2011 Leslie by agreement with Rod conspired to aiding and abetted the enterprise by condoning or allowing or attempting to make campaign contributions through the Rod and Leslie Aycox Foundation for and on behalf of the enterprise's loan sharking scheme by attempting or bribing of a public official to gain political influence in violation of Internal Revenue Service code 501(c) (3), by giving $100,000 to Restore Our Future and in furtherance of this conspiracy Rod after the violation was discovered and the $100,000 contribution was returned to the foundation in February 2012, that same month, Rod personally made a contribution to the pro-Romney super PAC of $100,000.

XI. Upon information and belief, RFF by their agreement with Rod and SMR, conspired to aiding and abetted by attempting or making campaign contributions on behalf of the enterprise to bribe public officials to gain political influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(b) (d) and other state and federal laws.

XII. Upon information and belief, Rod and his unknown partners by agreement conspired to violate 18 U.S.C. § 1962 (a) in violation of 18 U.S.C. § 1962(d) and other state's and federal laws.

XIII. Upon information and belief, Rod, SMR, Ricky, and Bonnie by agreement conspired to violate 18 U.S.C. § 1962 (b) in violation of 18 U.S.C. § 1962(d).

XIV. Upon information and belief, Rod, SMR and partners by agreement conspired to violate 18 U.S.C. § 1962 in violation of 18 U.S.C. § 1962(d) and Mississippi and other state's laws and federal laws.

**The Pattern of Racketeering Activity**

Rod, SMR and other partner's previously alleged RICO predicate acts in furtherance of his loan sharking scheme constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are related and continuous. Each predicate act had the same or similar purpose: the predicate acts involved investment of the profits of a pattern of racketeering activity that include laundering of money, murder, bribery of public official, collection of extensions of credit by extortionate means, Interference with commerce by threats or violence. This pattern of racketeering is separate from and distinct from the legitimate title loaning and other business of the enterprise members alleged herein.

Plaintiffs have sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962 as a proximate result by reason of the pattern of racketeering activity and RICO violations engaged in by Rod, SMR, and the enterprise Plaintiffs and the Class members have suffered injury to their business, property, or threat of harm to such, or loss of.

**Relatedness and Continuity of the Racketeering Activity**

All of the predicate acts alleged above are related to the defendant scheme of loan sharking. The acts are all related to Rod, SMR and the enterprise's premise that the law should give way to profit. Continuity is demonstrated by the predicate acts alleged herein because the pattern of racketeering involved multiple predicate acts and related predicate acts that have took place over many years. These predicate acts in furtherance of its scheme illustrate a threat of continued racketeering activity and evidence that the predicate acts constitute the regular way that Rod conducts business from 1993 to present da, as a proximate result of the investment of profits from a pattern of racketeering activity in an enterprise and RICO violations engaged in by Rod and SMR, Plaintiffs and the Class members have suffered an injury of loss of, or damage to their business, property, or threat of harm to such in violation of 18 U.S.C. § 1962 and the state of Mississippi and other state's laws and federal laws.

## X. CLAIMS FOR RELIEF

### COUNT 1: By Plaintiffs against Defendants for Violation of 18 U.S.C. § 1962(a)

1. Plaintiffs reallege and incorporate by reference all previous paragraphs.
2. The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides: It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce 18 U.S.C. § 1962(a)

3. The relevant time period for Rod and SMR's pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4. Defendants Rod and SMR, is and was at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(a).

5. Rod is a "person" under the civil RICO statute because he knowingly invested profits of laundered money from two suspected criminal partners to start the RICO enterprise Title Loans of America (TLA) "Aycox says his partners put up the money and he provided the expertise to open about 200 stores in 15 states", because Rods investments of the profits from the 1998 sale of his interest in the TLA RICO enterprise to fund the creation of the LML

18

enterprise, which later joined with ASR to form the association-in-fact enterprise in violation of 18 U.S.C. § 1962(a) and Mississippi state and other states and federal laws.

6. Rod violated RICO and injured Plaintiffs and class members in their business, property, or threat of harm to such by reason of his use of the enterprise TLA to launder money generated from a pattern of racketeering activity which caused the direct proximate harm to the plaintiffs and by reason of the investment of the profits by Rod from a pattern racketeering activity that created the RICO enterprise LML, which forms the LML, ASR association-in-fact enterprise which he uses to launder money generated by a pattern of racketeering activity which includes but is not limited to collection of extensions of credit by extortionate means in violation of 18 U.S.C. § 1962(a) and UCC § 9-609 (b) which resulted in plaintiffs Lindsey, Metzger, and class member's loss of, or damage to property or business or threat of harm to such.

7. SMR is a "person" under the civil RICO statute because as Rod's alter ego he used SMR to invest the profits from a pattern of racketeering activity to create the LML enterprise, which later joined with ASR to form the association-in-fact enterprise in violation of 18 U.S.C. § 1962(a) and Mississippi state and other states and federal laws.

8. SMR violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of SMR as Rod's alter ego he used SMR to make the investment of profits from a pattern racketeering activity that created the RICO enterprise LML and ASR's association-in-fact enterprise which he uses to launder money generated by a pattern of racketeering activity which includes but is not limited to collection of extensions of credit by extortionate means which affect interstate or foreign commerce in violation of 18 U.S.C. § 1962(a) and UCC § 9-609 (b), and Mississippi state and other state's and federal laws., which resulted in plaintiffs Lindsey and Metzger, and class member's loss of, or damage to property or business or threat of harm to such.

### COUNT 2: By Plaintiffs against Defendants for Violation of 18 U.S.C. § 1962(b)

1. Plaintiffs reallege and incorporate by reference all previous paragraphs.

2. The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(b).

3. The relevant time period for SMR, Rod, Ricky, and Bonnie's pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4. The relevant time period for LML and ASR pattern of racketeering stems from at least the year 2012, and continues to the filing of this RICO Class Action Complaint.

5. Defendants Rod, SMR, Ricky, and Bonnie, are and were at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(b).

6. Rod, is a "person" under the civil RICO statute because he directly acquired, and maintains an interest in or control of an enterprise through a pattern of racketeering activity, by his use of sole proprietorship of alter ego SMR which used proceeds from the sales of an interest in the RICO enterprise TLA alleged herein, to create LML which formed an association-in-fact enterprise with ASR in violation of 18 U.S.C. § 1962(b).

7. Rod violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of his use of alter ego SMR to acquire, and control an interest in an association-in-fact enterprise with ASR through a pattern of racketeering activity or through collection of an unlawful debt, by reason of under Rod's supervision of SMR he manages LML which knowingly commits the unlawful acts of but not limited to loan sharking, murder, collection of extensions of credit by extortionate means which affect interstate or foreign commerce which caused the proximate harm to the plaintiffs in violation of 18 U.S.C. § 1962(b) and other state and federal laws by enterprises forcefully taking, or damaging the property of the Plaintiffs.

8. SMR is a "person" under the civil RICO statute because as Rod's alter ego he knowingly used SMR to invest, acquire and maintain an interest in or control of an association-in-fact enterprise with ASR through a pattern of racketeering activity by laundering money in violation of 18 U.S.C. § 1962(b).

9. SMR violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of SMR as Rod's alter ego he maintains, control of an interest in an association-in-fact enterprise maintained through a pattern of racketeering activity or through collection of an unlawful debt, SMR manages LML which knowingly commits the unlawful acts of but not limited to loan sharking, murder, collection of extensions of credit by extortionate means which affect interstate or foreign commerce which caused the proximate harm to the plaintiffs in violation of 18 U.S.C. § 1962(b) (d) and other state and federal laws by enterprises forcefully taking, or damaging the property of the Plaintiffs.

10. Ricky is a "person" under the civil RICO statute because he knowingly acquired, owns and maintains an interest in or control of an enterprise through a pattern of racketeering activity, by reason of Ricky supervision of ASR which forms an association-in-fact enterprise with SMR, or through collection of an unlawful debt in violation of 18 U.S.C. § 1962(b).

11. Ricky violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of Ricky knowingly acquired, owns and maintains an interest in or control of ASR which forms an association-in-fact enterprise with SMR, or

through collection of an unlawful debt, by the collection of extensions of credit by extortionate means which affect interstate or foreign commerce which caused the proximate harm to the plaintiffs in violation of 18 U.S.C. § 1962(b) (d) and UCC § 9-609 (b) and other state and federal laws by enterprises forcefully taking, or damaging the property of the Plaintiffs.

12.    Bonnie is a "person" under the civil RICO statute by reason of she knowingly acquired, and maintains an beneficial interest in or control of an enterprise with Ricky through a pattern of racketeering activity, by reason of Bonnie's supervision as vice president of ASR which forms an association-in-fact enterprise with SMR or through collection of an unlawful debt in violation of 18 U.S.C. § 1962(b).

13.    Bonnie violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of she knowingly acquired, owns and maintains an interest in or control of ASR which forms an association-in-fact enterprise with SMR or through collection of an unlawful debt, by the collection of extensions of credit by extortionate means which affect interstate or foreign commerce which caused the proximate harm to the plaintiffs in violation of 18 U.S.C. § 1962(b) (d) and UCC § 9-609 (b) and other state and federal laws   by enterprises forcefully taking, or damaging the property of the Plaintiffs.

### COUNT 3:  By Plaintiffs against Defendants for Violation of 18 U.S.C. § 1962(c)

1.    Plaintiffs reallege and incorporate by reference all previous paragraphs.
2.    The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

It shall be unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  18 U.S.C. § 1962(c).

3.    The relevant time period for Rod, Leslie, RRF, Ricky, Bonnie and SMR  pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4.    The relevant time period for LML and ASR's pattern of racketeering stems from at least the year 2012, and continues to the filing of this RICO Class Action Complaint.

5.    Defendants Rod, Leslie, RRF, Ricky, Bonnie and SMR, is and was at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(c).

6.    Rod is a "person" under the civil RICO statute because he knowingly participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of racketeering activity or collection of unlawful debt by or attempting to bribe public officials on behalf of the enterprise, and  in violation of 18 U.S.C. § 1962(c).

7. Rod violated RICO and injured Plaintiffs and class members in their business, property, or threat of harm to such by reason of his conduct of managing the enterprise not to pursue gain, but to do so by unlawful means: to maximize its gain and profit through a pattern and practice of the systematic racketeering activity and decisions that placed financial goals above considerations of state and federal laws and the rights of the plaintiffs, by condoning or allowing or attempting to make campaign contributions through the Rod and Leslie Aycox Foundation, SMR, and personally, by agreement conspiring, attempting or bribing of a public official to gain influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity that was conducted in violation of18 U.S.C. § 1962(c) (d) and the state of Mississippi and other state's laws and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

8. SMR is a "person" under the civil RICO statute because as Rod's alter ego he knowingly used SMR to participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of racketeering activity or collection of unlawful debt by or attempting to bribe public officials on behalf of the enterprise, and in violation of 18 U.S.C. § 1962(c).

9. SMR violated RICO and injured Plaintiffs and class members in their business, property, or threat of harm to such by reason of its conduct of managing the enterprise not to pursue gain, but to do so by unlawful means: to maximize its gain and profit through a pattern and practice of the systematic racketeering activity and decisions that placed financial goals above considerations of state and federal laws and the rights of the plaintiffs, by condoning or allowing making, or attempting to make campaign contributions bribes to public officials on behalf of the enterprise violation of18 U.S.C. § 1962(c) and the state of Mississippi and other state's laws and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

10. Leslie is a "person" under the civil RICO statute because she knowingly participated in the affairs of the enterprise by her agreement to conspire to aiding and abetted by condoning or allowing or attempting to make campaign contributions through the Rod and Leslie Aycox Foundation by reason of but not limited to conspiring, attempting or bribing of a public official to gain influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

11. Leslie violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason her beneficial interest in the fulfillment of the profit goals of enterprise maintained through a pattern of racketeering activity by reason of her agreement to conspire, to aiding and abetted the enterprises profit goals, by attempting or given bribes in the form of campaign contributions to public officials on behalf of the RICO enterprise, with the unlawful purpose of gaining influence in the law making process' that effect the RICO enterprises profit, and other unknown acts at this point in discovery in violation

22

of 18 U.S.C. § 1962(c) (d) and the state of Mississippi and other state's laws and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

12. RFF is a "person" under the civil RICO statute because they knowingly participated in and acquired and maintains an beneficial interest in an enterprise through a pattern of racketeering activity by their agreement to conspire to aiding and abetted by condoning or allowing or attempting to make campaign contributions to bribe public officials to gain influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

13. RFF violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason their beneficial interest in the fulfillment of the profit goals of enterprise maintained through a pattern of racketeering activity by reason of their agreement to conspire to aiding and abetted the enterprises profit goals of by attempting or given bribes in the form of campaign contributions to public officials on behalf of the RICO enterprise, with the unlawful purpose of gaining influence in the law making process' that effect the RICO enterprises profit, and other unknown acts at this point in discovery in violation of 18 U.S.C. § 1962(c) (d) and the state of Mississippi and other state's laws and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

14. Ricky and Bonnie are "persons" under the civil RICO statute because they knowingly participated in and acquired and maintains a beneficial interest in the affairs of an enterprise through a pattern of racketeering activity by their agreement to conspire, aiding and abetted and allow ASR to be used by the enterprise to engaged in the collection of extensions of credit by extortionate means which affect interstate or foreign commerce in violation of 18 U.S.C. § 1962(c).

15. Ricky and Bonnie violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of their beneficial interest in the fulfillment of the profit goals of enterprise maintained through a pattern of racketeering activity by reason of their agreement to conspire to aiding and abetted the enterprise and allowed and effected ASR to be used by the enterprise to engaged in the collection of extensions of credit by extortionate means which affect interstate or foreign commerce in violation of 18 U.S.C. § 1962(c) (d) and the state of Mississippi and other state's laws and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.


**COUNT 4: By Plaintiffs against Defendants for Violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962.**

1. Plaintiffs reallege and incorporate by reference all previous paragraphs.

2. The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. 18 U.S. Code § 1962 (d)

3.    The relevant time period for Rod, Leslie, RRF, Ricky, Bonnie and SMR  pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4.    Defendants Rod, Leslie, RRF, Ricky, Bonnie and SMR, is and was at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and 1962(d).

5.    Rod is a "person" under the civil RICO statute because he knowingly by agreement conspired to violate 18 U.S. Code § 1962.

6.    Leslie is a "person" under the civil RICO statute because she knowingly by agreement conspired to violate 18 U.S. Code § 1962.

7.    RFF is a "person" under the civil RICO statute because they knowingly by agreement conspired to violate 18 U.S. Code § 1962.

8.    Ricky is a "person" under the civil RICO statute because he knowingly by agreement conspired to violate 18 U.S. Code § 1962.

9.    Bonnie is a "person" under the civil RICO statute because she knowingly by agreement conspired to violate 18 U.S. Code § 1962.

10.    SMR is a "person" under the civil RICO statute because as Rod's alter ego he knowingly by agreement used SMR to conspire to violate 18 U.S. Code § 1962.

11.    Rod, Leslie, RFF, Ricky, Bonnie and SMR violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of their beneficial interest in the fulfillment of the goals of enterprise maintained through a pattern of racketeering activity and by reason of their agreement to conspire to engage in the predicate acts alleged to form the violations of 18 U.S.C. § 1962 which affect interstate or foreign commerce, Defendants agreed to the objective of this conspiracy,  Defendants did overt acts in furtherance of that conspiracy in violation of 18 U.S.C. § 1962 and the state of Mississippi and other state's laws and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs and the Class Members.

## COUNT 5:   By Plaintiffs against Defendants for Violation of MS Code § 97-43-5(1)

1.    Plaintiffs reallege and incorporate by reference all previous paragraphs.

2.    The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:
It is unlawful for any person who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise. MS Code § 97-43-5(1)

3.    The relevant time period for Rod and SMR's pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4. Defendants Rod and SMR, is and was at all times relevant to this action, a RICO "person" within the meaning of MS Code § 97-43-5(1)

5. Rod is a "person" under the civil RICO statute because he knowingly invested profits of laundered money from two suspected criminal partners to start the RICO enterprise Title Loans of America (TLA) "Aycox says his partners put up the money and he provided the expertise to open about 200 stores in 15 states", because Rods investments of the profits from the 1998 sale of his interest in the TLA  RICO enterprise to fund the creation of the LML enterprise, which later joined with ASR to form the association-in-fact enterprise in violation of  MS Code § 97-43-5(1) and federal laws.

6. Rod violated RICO and injured Plaintiffs and class members in their business, property, or threat of harm to such by reason of his use of the enterprise TLA to launder money generated from a pattern of racketeering activity which caused the direct proximate harm to the plaintiffs and by reason of the investment of the profits by Rod from a pattern racketeering activity that created the RICO enterprise LML, which forms the LML, ASR association-in-fact enterprise which he uses to launder money generated by a pattern of racketeering activity which includes but is not limited to collection of extensions of credit by extortionate means in violation of MS Code § 97-43-5(1) and UCC § 9-609 (b) which resulted in plaintiffs Lindsey, Metzger, and class member's  loss of, or damage to property or business or threat of harm to such.

7. SMR is a "person" under the civil RICO statute because as Rod's alter ego he used SMR to invest the profits from a pattern of racketeering activity to create the LML enterprise, which later joined with ASR to form the association-in-fact enterprise in violation of MS Code § 97-43-5(1) and federal laws.

8. SMR violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of SMR as Rod's alter ego he used SMR to make the investment of profits from a pattern racketeering activity that created the RICO enterprise LML and ASR's association-in-fact enterprise which he uses to launder money generated by a pattern of racketeering activity which includes but is not limited to collection of extensions of credit by extortionate means  which affect interstate or foreign commerce in violation of MS Code § 97-43-5(1) and UCC § 9-609 (b), and  federal laws., which resulted in plaintiffs Lindsey and Metzger, and class member's  loss of, or damage to property or business or threat of harm to such.

**COUNT 5:   By Plaintiffs against Defendants for Violation of MS Code § 97-43-5(2)**

1. Plaintiffs reallege and incorporate by reference all previous paragraphs.

2. The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property. MS Code § 97-43-5(2)

3. The relevant time period for SMR, Rod, Ricky, and Bonnie's pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4. The relevant time period for LML and ASR pattern of racketeering stems from at least the year 2012, and continues to the filing of this RICO Class Action Complaint.

5.  Defendants Rod, SMR, Ricky, and Bonnie, are and were at all times relevant to this action, a RICO "person" within the meaning of MS Code § 97-43-5(2).

6.  Rod, is a "person" under the civil RICO statute because he directly acquired, and maintains an interest in or control of an enterprise through a pattern of racketeering activity, by his use of sole proprietorship of alter ego SMR which used proceeds from the sales of an interest in the RICO enterprise TLA alleged herein, to create LML which formed an association-in-fact enterprise with ASR in violation of MS Code § 97-43-5(2).

7.  Rod violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of his use of alter ego SMR to acquire, and control an interest in an association-in-fact enterprise with ASR through a pattern of racketeering activity or through collection of an unlawful debt, by reason of under Rod's supervision of SMR he manages LML which knowingly commits the unlawful acts of but not limited to loan sharking, murder, collection of extensions of credit by extortionate means which caused the proximate harm to the plaintiffs in violation of MS Code § 97-43-5(2) and federal laws by enterprises forcefully taking, or damaging the property of the Plaintiffs.

8.  SMR is a "person" under the civil RICO statute because as Rod's alter ego he knowingly used SMR to invest, acquire and maintain an interest in or control of an association-in-fact enterprise with ASR through a pattern of racketeering activity by laundering money in violation of MS Code § 97-43-5(2) .

9.  SMR violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of SMR as Rod's alter ego he maintains, control of an interest in an association-in-fact enterprise maintained through a pattern of racketeering activity or through collection of an unlawful debt, SMR manages LML which knowingly commits the unlawful acts of but not limited to loan sharking, murder, collection of extensions of credit by extortionate means which caused the proximate harm to the plaintiffs in violation of MS Code § 97-43-5(2) (4) and federal laws by enterprises forcefully taking, or damaging the property of the Plaintiffs.

10.  Ricky is a "person" under the civil RICO statute because he knowingly acquired, owns and maintains an interest in or control of an enterprise through a pattern of racketeering activity, by reason of Ricky supervision of ASR which forms an association-in-fact enterprise with SMR, or through collection of an unlawful debt in violation of MS Code § 97-43-5(2)

11.  Ricky violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of Ricky knowingly acquired, owns and maintains an interest in or control of ASR which forms an association-in-fact enterprise with SMR, or through collection of an unlawful debt, by the collection of extensions of credit by extortionate means which caused the proximate harm to the plaintiffs in violation of MS Code § 97-43-5(2) (4) and UCC § 9-609 (b) and federal laws by enterprises forcefully taking, or damaging the property of the Plaintiffs.

12.  Bonnie is a "person" under the civil RICO statute by reason of she knowingly acquired, and maintains an beneficial interest in or control of an enterprise with Ricky through a

pattern of racketeering activity, by reason of Bonnie's supervision as vice president of ASR which forms an association-in-fact enterprise with SMR or through collection of an unlawful debt in violation of MS Code § 97-43-5(2).

13.    Bonnie violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of she knowingly acquired, owns and maintains an interest in or control of ASR which forms an association-in-fact enterprise with SMR or through collection of an unlawful debt, by the collection of extensions of credit by extortionate means which caused the proximate harm to the plaintiffs  in violation of MS Code § 97-43-5(2) (4) and UCC § 9-609 (b) and federal laws  by enterprises forcefully taking, or damaging the property of the Plaintiffs.

**COUNT 6:    By Plaintiffs against Defendants for Violation of MS Code § 97-43-5(3)**

1.    Plaintiffs reallege and incorporate by reference all previous paragraphs.

2.    The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:
It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt MS Code § 97-43-5(3)

4.    The relevant time period for Rod, Leslie, RRF, Ricky, Bonnie and SMR  pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

5.    The relevant time period for LML and ASR's pattern of racketeering stems from at least the year 2012, and continues to the filing of this RICO Class Action Complaint.

6.    Defendants Rod, Leslie, RRF, Ricky, Bonnie and SMR, is and was at all times relevant to this action, a RICO "person" within the meaning of MS Code § 97-43-5(3)

7.    Rod is a "person" under the civil RICO statute because he knowingly participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of racketeering activity or collection of unlawful debt by or attempting to bribe public officials on behalf of the enterprise, and  in violation of MS Code § 97-43-5(3).

8.    Rod violated RICO and injured Plaintiffs and class members in their business, property, or threat of harm to such by reason of his conduct of managing the enterprise not to pursue gain, but to do so by unlawful means: to maximize its gain and profit through a pattern and practice of the systematic racketeering activity and decisions that placed financial goals above considerations of state and federal laws and the rights of the plaintiffs, by condoning or allowing or attempting to make campaign contributions through the Rod and Leslie Aycox Foundation, SMR, and personally, by agreement conspiring, attempting or bribing of a public official to gain influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity  that was conducted in violation of MS Code § 97-43-5(3) and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

9.    SMR is a "person" under the civil RICO statute because as Rod's alter ego he knowingly used SMR to participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of racketeering activity or

collection of unlawful debt by or attempting to bribe public officials on behalf of the enterprise, and in violation of MS Code § 97-43-5(3).

10. SMR violated RICO and injured Plaintiffs and class members in their business, property, or threat of harm to such by reason of its conduct of managing the enterprise not to pursue gain, but to do so by unlawful means: to maximize its gain and profit through a pattern and practice of the systematic racketeering activity and decisions that placed financial goals above considerations of state and federal laws and the rights of the plaintiffs, by condoning or allowing making, or attempting to make campaign contributions bribes to public officials on behalf of the enterprise violation of MS Code § 97-43-5(3) and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

11. Leslie is a "person" under the civil RICO statute because she knowingly participated in the affairs of the enterprise by her agreement to conspire to aiding and abetted by condoning or allowing or attempting to make campaign contributions through the Rod and Leslie Aycox Foundation by reason of but not limited to conspiring, attempting or bribing of a public official to gain influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity in violation of MS Code § 97-43-5(3).

12. Leslie violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason her beneficial interest in the fulfillment of the profit goals of enterprise maintained through a pattern of racketeering activity by reason of her agreement to conspire, to aiding and abetted the enterprises profit goals, by attempting or given bribes in the form of campaign contributions to public officials on behalf of the RICO enterprise, with the unlawful purpose of gaining influence in the law making process' that effect the RICO enterprises profit, and other unknown acts at this point in discovery in violation of MS Code § 97-43-5(3) and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

13. . RFF is a "person" under the civil RICO statute because they knowingly participated in and acquired and maintains an beneficial interest in an enterprise through a pattern of racketeering activity by their agreement to conspire to aiding and abetted by condoning or allowing or attempting to make campaign contributions to bribe public officials to gain influence and cause to be enacted laws that would further enable the enterprises profit goals through a pattern of racketeering activity in violation of MS Code § 97-43-5(3).

14. RFF violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason their beneficial interest in the fulfillment of the profit goals of enterprise maintained through a pattern of racketeering activity by reason of their agreement to conspire to aiding and abetted the enterprises profit goals of by attempting or given bribes in the form of campaign contributions to public officials on behalf of the RICO enterprise, with the unlawful purpose of gaining influence in the law making process' that effect the RICO enterprises profit, and other unknown acts at this point in discovery in violation of MS Code § 97-43-5(3) and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

15. . Ricky and Bonnie are "persons" under the civil RICO statute because they knowingly participated in and acquired and maintains a beneficial interest in the affairs of an enterprise through a pattern of racketeering activity by their agreement to conspire, aiding

and abetted and allow ASR to be used by the enterprise to engaged in the collection of extensions of credit by extortionate means in violation of MS Code § 97-43-5(3)

16. Ricky and Bonnie violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of their beneficial interest in the fulfillment of the profit goals of enterprise maintained through a pattern of racketeering activity by reason of their agreement to conspire to aiding and abetted the enterprise and allowed and effected ASR to be used by the enterprise to engaged in the collection of extensions of credit by extortionate means in violation of MS Code § 97-43-5(3) and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs.

**COUNT 7:   By Plaintiffs against Defendants for Violation of MS Code § 97-43-5(4)**

1.   Plaintiffs reallege and incorporate by reference all previous paragraphs.

2.   The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:
It is unlawful for any person to conspire to violate any of the provisions of subsections (1), (2) or (3) of this section MS Code § 97-43-5(4).

3.   The relevant time period for Rod, Leslie, RRF, Ricky, Bonnie and SMR  pattern of racketeering stems from at least the year 1993, and continues to the filing of this RICO Class Action Complaint.

4.   Defendants Rod, Leslie, RRF, Ricky, Bonnie and SMR, is and was at all times relevant to this action, a RICO "person" within the meaning of MS Code § 97-43-5(4).

5.   Rod is a "person" under the civil RICO statute because he knowingly by agreement conspired to violate MS Code § 97-43-5(1) (2) (3).

6.   Leslie is a "person" under the civil RICO statute because she knowingly by agreement conspired to violate MS Code § 97-43-5(1) (2) (3).

7.   RFF is a "person" under the civil RICO statute because he knowingly by agreement conspired to violate MS Code § 97-43-5(1) (2) (3).

8.   Ricky is a "person" under the civil RICO statute because he knowingly by agreement conspired to violate MS Code § 97-43-5(1) (2) (3).

9.   Bonnie is a "person" under the civil RICO statute because she knowingly by agreement conspired to violate MS Code § 97-43-5(1) (2) (3).

10. SMR is a "person" under the civil RICO statute because as Rod's alter ego he knowingly by agreement used SMR to conspire to violate MS Code § 97-43-5(1) (2) (3).

11. Rod, Leslie, RFF, Ricky, Bonnie and SMR violated RICO and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of their beneficial interest in the fulfillment of the goals of enterprise maintained through a pattern of racketeering activity and by reason of their agreement to conspire to engage in the predicate acts alleged to form the violations of MS Code § 97-43-5(4), Defendants agreed to the objective of this conspiracy,  Defendants did overt acts in furtherance of that conspiracy in violation of MS Code § 97-43-5(4) and federal laws, which caused the forcefully taking, loss or damaging the property of the Plaintiffs and the Class Members, Since Plaintiffs have

been injured by reason of Defendant's violations they are entitled to equity relief under MS Code § 97-43-9

**COUNT 8: By Plaintiffs against Defendants for Violation of 42 U.S.C. § 1983**

1. Plaintiffs reallege and incorporate by reference all previous paragraphs.
2. The Civil action for deprivation of rights (CADR) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress 42 U.S. Code § 1983.

3. The relevant time period for Rod, SMR, GPT and GPD deprivation of civil rights stems from at least the year 2012 and maybe prior to the foregoing date, and continues to the filing of this Class Action Complaint.
4. Rod is a "person" under the civil CADR statute because he knowingly under the color of UCC § 9-609 (b) violated Plaintiffs civil right to due process in violation of 42 U.S. Code § 1983 and United States Constitution, and other federal and state laws.
5. SMR is a "person" under the civil CADR statute because as Rods alter ego he used SMR too knowingly under the color of UCC § 9-609 (b) violated Plaintiffs civil right to due process in violation of 42 U.S. Code § 1983 and United States Constitution, and other federal and state laws.
6. GPT is a "person" under the civil CADR statute because it knowingly under the color of Municipal policy "ignorance" and its supervisory position was deliberately indifferent to and violated Plaintiffs civil right to due process and equal protection of the laws in violation of 42 U.S. Code § 1983 and United States Constitution, and other federal and state laws.
7. GPD is a "person" under the civil CADR statute because it or they knowingly under the color of UCC § 9-609 (b) and Municipal policy "ignorance" conspired, aided and abetted the RICO enterprise and violated Plaintiffs civil right to due process and equal protection of the laws in violation of 42 U.S. Code § 1983 and United States Constitution, and other federal and state laws.
8. Ricky is a "person" under the civil CADR statute because he knowingly under the color of UCC § 9-609 (b), converted Plaintiffs personal property held within his vehicle and violated Plaintiffs civil right to due process in violation of 42 U.S. Code § 1983 and United States Constitution, and other federal and state laws.
9. Bonnie is a "person" under the civil CADR statute because she knowingly under the color of UCC § 9-609 (b), converted Plaintiffs personal property held within his vehicle and violated Plaintiffs civil right to due process in violation of 42 U.S. Code § 1983 and United States Constitution, and other federal and state laws.
10. Rod, Ricky, Bonnie, SMR, GPT and GPD violated Plaintiffs civil rights under the color of UCC § 9-609 (b), or Municipal policy "ignorance" and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of their

beneficial interest in the fulfillment of the goals of enterprise maintained through a pattern of racketeering activity and by reason of their agreement to conspire to engage in the acts alleged to form the violations of 42 U.S. Code § 1983, 1985 (3), Defendants agreed to the objective of this conspiracy before or after the fact, Defendants did overt acts in furtherance of that conspiracy in violation of42 U.S. Code § 1985 (3), which caused the forcefully taking, loss or damaging , and converting the property of the Plaintiffs and the Class Members, Since Plaintiffs have been injured by reason of Defendant's violations they are entitled to equity, compensatory, and punitive relief under 42 U.S. Code § 1983.

## COUNT 9: By Plaintiffs against Defendants for Violation of 42 U.S.C. § 1985 (3)

1. Plaintiffs reallege and incorporate by reference all previous paragraphs.
2. The Conspiracy to interfere with civil rights (CICR) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators 42 U.S. Code § 1985 (3).

3. The relevant time period for Rod, Ricky, Bonnie, SMR, GPD conspiracy stems from at least the year 1998, and continues to the filing of this Class Action Complaint.
4. Defendants Rod, Ricky, Bonnie, SMR, and GPD is and was at all times relevant to this action, a conspirator "person" within the meaning of 42 U.S. Code § 1985 (3).
5. Rod is a "person" under the civil CICR statute because he knowingly by agreement conspired to violate 42 U.S. Code § 1985 (3).
6. Ricky is a "person" under the civil CICR statute because he knowingly by agreement conspired to violate 42 U.S. Code § 1985 (3).
7. Bonnie is a "person" under the civil CICR statute because she knowingly by agreement conspired to violate 42 U.S. Code § 1985 (3).
8. SMR is a "person" under the civil CICR statute because as Rod's alter ego he knowingly by agreement used SMR to conspire to violate 42 U.S. Code § 1985 (3).
9. GPD is a "person" under the civil CICR statute because it or they knowingly by agreement before or after the fact conspired to violate 42 U.S. Code § 1985 (3).
10. Rod, Ricky, Bonnie, SMR, and GPD violated 42 U.S. Code § 1985 (3) and injured Plaintiffs and class members in their business, property or threat of harm to such by reason of their beneficial interest in the fulfillment of the goals of enterprise

maintained through a pattern of racketeering activity and by reason of their agreement to conspire to engage in the acts alleged to form the violations of 42 U.S. Code § 1985 (3)  Defendants agreed to the objective of this conspiracy before or after the fact, Defendants did overt acts in furtherance of that conspiracy in violation of 42 U.S. Code § 1985 (3), which caused the forcefully taking, loss or damaging the property of the Plaintiffs and the Class Members, Since Plaintiffs have been injured by reason of Defendant's violations they are entitled to equity relief under 42 U.S. Code § 1985 (3), and 1986.

## XI. LIST OF PERTINENT CONVERTED PROPERTY

The following known property converted to the best of Plaintiff knowledge and belief, the plaintiff has clear legal ownership or right to possession of the property at the time of the conversion and continues to have such rights; Defendant converted Plaintiff Lindsey's property by reason of their unlawful taking of his truck which held the converted property inside it, Lindsey made demand for the return of his property and was refused by Defendants  without payment and the surrender of his property rights in his truck to which Lindsey refused,  Lindsey has the right to immediate possession of property converted, which includes  but is not limited to :

1. Mechanics tools and specialty tools estimated value $2,500
2. Touch screen radio estimated value $350
3. Cerwin Vega competition class D amp estimate value $400
4. IPod Nano touch estimated value $150
5. Competition class speaker and box estimated value $350
6. TWIC card, $132.50 replacement card price $65
7. Various other personal items estimated value $500 or more.

## XII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, and for the wrongs cited factually and legally in this Complaint, judgment should be rendered in Plaintiffs and the Class members' favor against Defendants, as follows:

a.       An award of compensatory damages that will fairly represent the economic injuries to the Plaintiffs and Class members' business and property;

b.       An award of treble damages herein pursuant to 18 U.S.C. § 1964(c);

c.       An award of attorneys' fees pursuant to 18 U.S.C. § 1964(c);

d.       An award of Compensatory damages pursuant to 42 U.S.C. § 1983 and 1986;

e.       An award of punitive damages pursuant to 42 U.S.C. § 1983;

f.       Pre-judgment interest on all awards;

g.       Appropriate injunctive relief;

h.      An order certifying the Class and any appropriate subclasses as set forth herein under the appropriate provisions of F.R.C.P. 23, appointing Plaintiffs as Class Representatives, and the appointing of counsel for the Class; and

i.      All further relief as the Court and/or the jury may deem appropriate, legal or equitable, in any form to which Plaintiffs and Class members may be entitled.

Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 29, 2014.

Respectfully submitted,

Plaintiffs     /s/ Thomas Mark Lindsey     /s/ Tari Lynn Metzger